# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

V.

LARRY AYRES

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:17-mj- 01050

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November 17, 2017, in Marion County, in the Southern District of Indiana, defendant did commit,

Count 1: Possession of a firearm by a convicted felon, in violation of Title 18 U.S.C. § 922(g)(1).

I further state that I am a special agent, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent, Steven T. Secor, FBI

Sworn to before me, and subscribed in my presence

November 17, 2017                    at    Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge          _____
**Name and Title of Judicial Officer**                Signature of Judicial Officer

## AFFIDAVIT

I, STEVEN T. SECOR ("Your Affiant"), being duly sworn to law, depose and state as follows:

1. I am and have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since September 2003. Prior to that time, I spent seventeen (17) weeks training to be a Special Agent at the FBI Academy in Quantico, Virginia beginning on June 1, 2003. Through the FBI, I have received extensive training related to the investigation of federal crime to include violent crime. I am currently assigned to the FBI Violent Crimes Task Force ("VCTF") in the Indianapolis Field Office of the FBI. In this assignment, I investigate all manner of violent crime to include firearm related offenses.

2. Your Affiant has participated in the investigation of the offenses described within this affidavit. The statements contained in this affidavit are based in part on information provided by, and conversations held with, Special Agents of the FBI; Task Force Officers ("TFOs") assigned to the Indianapolis VCTF and Safe Streets Gang Task Force ("SSGTF"); detectives and patrol officers of the Indianapolis Metropolitan Police Department ("IMPD"); Indiana State Police ("ISP"); witnesses; and on your Affiant's experience and background as a Special Agent of the FBI.

3. Your Affiant has not included each and every fact that has been revealed through the course of this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the required foundation for the issuance of the requested Warrant for Arrest.

## BACKGROUND OF THE INVESTIGATION

4. Your Affiant is currently involved in an investigation of a subject identified as LARRY DOUGLAS AYERS ["AYERS"], black male, date of birth \*\*/\*\*/1981, Social Security Account Number \*\*\*-\*\*-3040. AYERS' criminal history includes five (5) felony convictions in the state of Indiana. The first conviction was for Resisting Law Enforcement (D Felony) in 2002. The second was for Dealing Cocaine in 2002. The third was for Dealing in Narcotic Drugs in 2007, the fourth was for Resisting Law Enforcement in 2014. Possession of Methamphetamine in 2014. These convictions were confirmed through an FBI NCIC check conducted on July 23, 2017.

5. On or about November 17, 2017, a series of search and arrest warrants were executed at multiple locations as part of a multi-agency sweep which was the culmination of a months-long, FBI-led investigation into narcotic and firearms offenses in the Indianapolis area. One of the federal search warrants executed as part of this sweep was at 6305 Blakeview Court, Indianapolis, Indiana. Upon entry into the residence by an Indiana State Police SWAT team, three individuals were located and detained by law enforcement. One of the individuals was AYERS. The other two were AYERS' girlfriend and his eleven year old daughter.

6. When the ISP SWAT team made entry, the eleven year old daughter was temporarily removed from the inside of the residence. AYERS then came out of the bedroom followed by his girlfriend. When questioned for officer safety reasons if there were any guns present at the house, the girlfriend stated that she

kept a gun that was hers on her side of the bed on the nightstand. The eleven year old stated words to the effect of "My daddy has a gun, but he doesn't do bad things with it." When initially clearing the bedroom, the ISP SWAT team did not locate a gun on the nightstand as the girlfriend stated.

7. A dedicated search team then began the search warrant execution. The FBI team leader for the search was informed there should be a gun on the nightstand per the information provided by the girlfriend. The team leader did not see a gun as specific by the girlfriend. The girlfriend was then brought into the bedroom by the team leader and asked to identify the location of the gun. Upon failing to see a gun on the nightstand, the girlfriend stated words to the effect that "When I go to bed, I put it on the nightstand. I put it there last night." The girlfriend also added that when law enforcement made entry into the residence, AYERS' was the first to get up. The girlfriend was then removed from the bedroom while the FBI-led search team began a more detailed search of the residence.

8. Located between the mattress and the box spring of the bed believed to be AYERS' and the girlfriend's was a Smith & Wesson, semi-automatic .40 caliber pistol. The pistol was loaded with one round in the chamber. The serial number on the pistol was obliterated.

9. The search team noted items next to each side of the bed which indicated which side of the bed AYERS and girlfriend slept on. On the side of the bed where the pistol was found appeared to be AYERS' side of the bed. Items noted here were a pair of men's jeans on the floor. AYERS later asked for this pair of jeans before he was transported from the location. In the jeans was a wallet with

        identification in the name of AYERS. Also on this side of the bed on the nightstand was a Social Security card in the name of AYERS.

10.     On the opposite side of the bed from where the gun was found were items which appeared to belong to the girlfriend. These items included female undergarments, clothes, and sex toys usually employed for female pleasure. The girlfriend later asked FBI agents to retrieve some of these clothes so that she could get dressed. These were the clothes retrieved from the opposite side of the bed the girlfriend originally identified as where she kept her gun on her nightstand.

11.     In your AFFIANT's training and experience, it is not uncommon for the girlfriends or spouses of convicted felons to claim ownership of guns when these guns are in fact possessed by the felon. It is commonly the belief of the felons that they can avoid additional charges by having their significant others claim ownership.

## CONCLUSION

Based on the information detailed above, your Affiant believes AYERS is in violation of:

- Title 18 United States Code, Section 922(g) in that he knowingly possessed a firearm having been previously convicted for crimes punishable by imprisonment for a term exceeding one year.

- Title 18 United States Code, Section 922(k) in that the firearm had an obliterated serial number.

FURTHER YOUR AFFIANT SAITH NOT

*(signature)*
Steven T. Secor
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me the ___17th___ day of November, 2017

*(signature)*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana